# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| In re: | |
| GORDON PROPERTIES, LLC, | Case No. 09-18086-RGM (Chapter 11) |
| Debtor. | |
| GORDON PROPERTIES, LLC, | |
| Plaintiff, | |
| vs. | Adv. Proc. No. 11-1020 |
| FIRST OWNERS' ASSOCIATION OF FORTY SIX HUNDRED CONDOMINIUM, INC., *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

THIS CASE is before the court on the defendants' motion to dismiss the complaint for lack of jurisdiction. Gordon Properties, LLC, the debtor, filed a four-count complaint asserting that First Owners' Association of Forty Six Hundred Condominium, Inc., and the other defendants (i) violated the automatic stay; (ii) engaged in corporate election fraud at the 2009 annual meeting; (iii) failed to hold annual meetings in 2007, 2008, 2009 and 2010 in violation of the Virginia Code and the condominium instruments; and, as to the individual defendants, (iv) breached their fiduciary duties as officers and directors of the condominium association. The motion will be granted as to the last three counts and denied as to the first.

**The Complaint**[1]

The debtor owns 39 condominium units at Forty Six Hundred Condominium, a mixed use high rise condominium. The condominium consists of a 16-story building containing residential and commercial condominium units and two separate detached street-front commercial units. The debtor owns four residential units, 34 commercial units, and one street-front commercial unit. The 39 condominium units constitute a 19% interest in the common elements of the condominium.

Several years ago the board of directors determined that the condominium had, for almost 30 years, been assessing the street-front condominium unit improperly. It sought to correct the error and assessed it, to the extent not barred by the statute of limitations, for the amount it should have been, but had not previously been, assessed. The assessment was approximately $300,000. The debtor contested the assessment. Litigation ensued in state court. The debtor ultimately filed a voluntary petition in bankruptcy under Chapter 11 of the United States Bankruptcy Code in this court on October 2, 2009.

The condominium's by-laws provide that an owner may not vote at a condominium meeting if he is more than 30 days in arrears in the payment of his condominium fees. The debtor anticipated that the condominium would enforce this provision of the by-laws and deny it the right to vote at the 2009 annual meeting which was scheduled to be held on October 7, 2009. The condominium had previously denied the debtor its right to vote because of its failure to pay the disputed condominium assessment. The debtor filed a complaint in this court immediately after filing its petition, but before the 2009 annual meeting, seeking an immediate order directing the condominium

---

[1]The facts are taken as alleged by the debtor in its complaint, including this court's Memorandum Opinion in *Gordon Properties, LLC v. First Owners' Association of Forty Six Hundred Condominium, Inc.,* Case No. 09-1304 (Docket Entry 35) which the debtor incorporated by reference into its complaint. Complaint at ¶67.

to allow it to vote at the 2009 annual meeting, arguing that denying it the right to vote violated §362 of the Bankruptcy Code because the enforcement of the provision in the condominium instruments was an effort to collect a pre-petition debt, the disputed condominium assessment. After holding an expedited hearing, the court denied the requested relief. The 2009 annual meeting was held as scheduled on October 7, 2009.

At the 2009 annual meeting, approximately 38% of the unit owners registered for the meeting. A quorum is 50%. The 38% consisted of the debtor's 19% membership interest and proxies for an additional 15% membership interest solicited by two individuals who were independent of the debtor but generally opposed to the incumbent board of directors. Several members of the condominium, notably members of the board of directors and the chairman of the elections committee, were present, participated in the meeting, but were not counted as part of the quorum. The proxies held by the two individuals and the debtor controlled about 90% of the votes present at the annual meeting.

The chairman of the elections committee reported that no quorum was present. Although he was not counted for purposes of quorum, he moved that the meeting be adjourned *sine die.* One of the individuals holding proxies unsuccessfully sought recognition from the chair. She sought to adjourn the meeting for 30 days rather than adjourning the meeting *sine die* so that further efforts could be made to obtain a quorum. The debtor and the two individuals holding the proxies, altogether accounting for 90% of the votes present, voted against the motion to adjourn *sine die,* but the chair announced that the motion had passed and adjourned the meeting without giving any member the opportunity to appeal the decision of the chair or ask for a division of the house.

After the meeting, the debtor sought to hold the condominium in contempt for violating the automatic stay. After a lengthy hearing, the court ruled that enforcement of the by-law provision denying a debtor the right to vote on account of its pre-petition debt violated §362 of the Bankruptcy Code, but that in this instance, the actions had not been taken to collect a pre-petition debt but to continue the incumbent directors in office for another year.[2] The condominium appealed the decision. The District Court affirmed this court and the condominium appealed to the Court of Appeals. The appeal had not been heard by the Court of Appeals when the board of directors scheduled the 2010 annual meeting.

The 2010 annual meeting was scheduled for October 6, 2010. On September 29, 2010, after notice of the meeting was given to all unit owners, the board of directors postponed the meeting without setting a new date. The notice to the owners of the postponement stated:

> **The Board of Directors regrets that it has become necessary to postpone the 2010 Annual Meeting** . . . Our legal counsel has analyzed our legal situation in the current litigation with a unit owner which filed for bankruptcy protection and has advised us that proceeding with the Annual Meeting without a court decision on the voting issue would not be advisable and would put the Association at risk. Although we requested an expedited hearing and expected to have a decision by the courts earlier this month, a decision will not be obtained for some months. Also, there has recently been improper, and likely illegal, campaign activity that has invalidated an unknown number of proxy forms. Thus, **the Annual Meeting cannot be held on October 6 and will be rescheduled once clarification of these critical issues is provided by the courts.**
>
> [The condominium's] Legal Counsel offers the following description of our dilemma:
>
>> *with respect to the issue of whether a delinquent unit owner which has filed for bankruptcy (in this case, Gordon Properties, LLC) should be allowed to vote at the upcoming Annual Meeting,* ***we believe the Board should postpone***

---

[2]All directors are holdovers or were appointed by holdover directors. The last annual meeting was held in October 2006 at which half of the directors were elected for two-year terms. The terms of other half expired in October 2007. There has been no annual meeting or election since 2006.

4

> ***the meeting until such time as a final decision has been obtained from the federal courts as to whether enforcement of the voter eligibility requirements of the Association's Bylaws violates the automatic stay.*** *Otherwise, the Board is placed in the untenable position of potentially violating the [automatic] stay, and subjecting the Association to <u>sanctions and other penalties</u> if Gordon Properties is not allowed to vote, or allowing Gordon Properties to vote in violation of the Bylaws and the Condominium Act and <u>potentially having to throw out the results of any election</u> if the appellate court subsequently agrees that enforcement of the Bylaws as to Gordon Properties does not violate the automatic stay. Notwithstanding the Association's efforts to obtain a binding court decision on this issue, the conflict between the apparent holding by Judge Mayer in the Bankruptcy Court and the clear provisions of the Association's Bylaws poses an insoluble dilemma for the Board and the Association which almost forces the Association to choose among alternatives which are all fraught with risk.*
>
> *An additional factor is the Board's discovery that an unknown individual distributed to unit owners a flyer offering a chance to win a free HDTV theater system if the unit owners will send their proxies to an anonymous post office box address. This activity, however, appears to be an illegal raffle under Virginia Code 18.2-340 et seq. In addition, the collection of proxies by an anonymous person or entity (an "undisclosed principal") would also violate established agency rules related to the proper collection of and validity of proxies. Moreover, since the person soliciting the proxies is unknown, it will be impossible to identify any proxies obtained through this improper solicitation. Use of the improper proxies will taint the integrity of any election or vote at the 2010 Annual Meeting.* ***According, the Board should postpone the meeting to reissue new proxy forms to ensure the validity of all proxies to be used at the Annual Meeting.***

Complaint, Exhibit A (Italics, bolding and underlining in original).

The complaint succinctly states it objectives and the bases for its requested relief in its introductory paragraph which states:

> This is an action for injunctive, equitable and other relief brought by Gordon Properties LLC, pursuant to 11 U.S.C. §362, Va. Code Ann. §§13.1-801 *et seq.*, §§55-79.38 *et seq.*, and common law, against the Defendants for an injunction and damages for violation of the automatic stay, judicial review of a corporate election, breach of fiduciary duty, and other relief

The complaint contains four counts. The first asserts that the postponement of the 2010 meeting was an action taken by the board of directors to deny the debtor its right to vote on account of its pre-petition debt and therefore violated §362 of the Bankruptcy Code. Count II, captioned "Corporate Election Fraud", alleges that the board of directors' actions during the 2009 annual meeting were improper and asks that the meeting be re-convened. Count III, captioned "Failure to Hold Annual Meetings", asserts that the last annual meeting held was in 2006. The Virginia Code permits a court to order an annual meeting be held if one has not been held for two years. The failure to hold an annual meeting also violates the condominium documents. The debtor requested that this court order the condominium to hold an annual meeting pursuant to the requirements of the Virginia Code and the condominium documents. Count IV, captioned "Breach of Fiduciary Duty", asserts that the individual defendants (who are all members of the board of directors or was the chairman of the elections committee) breached their fiduciary duties.

The debtor requested that the court remedy the violations by ordering an annual meeting be held and that it be allowed to vote.

The defendants are the condominium association, the incumbent directors and the chairman of the 2009 elections committee. They moved to dismiss the complaint for lack of jurisdiction.

### **Discussion**

The jurisdiction of this court is provided in 28 U.S.C. §1334 and the order of reference of the United States District Court of the Eastern District of Virginia dated July 13, 1984. Section 1334 states:

> (b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the

>district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. §1334(b). As permitted by 28 U.S.C. §157(a), the District Court referred such matters to the Bankruptcy Court. The question is which, if any, of the four counts are within the jurisdictional grant of 28 U.S.C. §1334(b).

### Counts II, III and IV

Counts II, III and IV are not civil proceedings arising under Title 11. They arise under state law, if at all. The question is whether they arise in a case under Title 11 or are related to a case under Title 11, that is, the Chapter 11 case of Gordon Properties, LLC.

The Court of Appeals for the Fourth Circuit has discussed both cases that arise in a case under Title 11 and that are related to a case under Title 11. With respect to "arising in" jurisdiction pursuant to 28 U.S.C. §157(a), the Court of Appeals stated:

>A proceeding or claim "arising in" Title 11 is one that is "'not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy.'" *Grausz v. Englander* 321 F.3d 467, 471 (4th Cir. 2003) (quoting *Bergstrom v. Dalkon Shield Claimants Trust* (*In re A.H. Robins Co.*)). 86 F.3d 364, 372 (4th Cir.1996)). Therefore, a " 'controversy arises in Title 11' when 'it would have no practical existence *but for* the bankruptcy.'" *Id.* (quoting *Bergstrom,* 86 F.3d at 372). The Debtor argues that there is "arising in" jurisdiction under §1334(b) because the breach of contract caused its bankruptcy and the tortious interference complicated the administration of the bankruptcy case. We do not find the argument persuasive.

*Valley Historic Ltd. P'ship. v. Bank of New York (In re Valley Historic)*, 486 F.3d 831, 835-836 (4th Cir.2007).

With respect to "related to" jurisdiction, the Court of Appeals

7

> has adopted the test articulated by the Third Circuit in *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984), for determining "related to" jurisdiction. *See A.H. Robins Co., v. Piccinin*, 788 F.2d 994, 1002 n. 11 (4th Cir.1986). In short, "the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.*" *Owens-Ill., Inc. v. Rapid Am. Corp. (In re Celotex Corp*.), 124 F.3d 619, 625 (4th Cir.1997) (quoting *Pacor*, 743 F.2d at 994). Therefore, "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and [it] in any way impacts upon the handling and administration of the bankruptcy estate." *Id.* at 625-26, *see also Spartan Mills v. Bank of Am. Ill.*, 112 F.3d 1251, 1255-56 (4th Cir. 1997).

*Id.* at 836.

Counts II, III, and IV do not arise in a case under Chapter 11. The claims arise under state law without regard to whether a bankruptcy proceeding involving the debtor was pending. They have an independent existence outside of the bankruptcy case. Nor are the claims based on any right created by Title 11. When annual meetings should be held and how they are to be conducted are matters that existed prior to the filing of the petition in this case and will continue to exist after this case is closed. They are not dependant in any way on the filing or the pendency of the bankruptcy case.

Counts II, III and IV are not related to a case under Title 11. The outcome of the matters raised in Counts II, III and IV will not alter the debtor's rights, liabilities, options or freedom of action. Who sits on the board of directors of the association has no effect on the debtor's liability for the disputed condominium fees or the determination of the proper manner in which assessments are apportioned among all of the members. Those matters are governed by the Condominium Act and the condominium documents. Nor will the membership of the board of directors affect the manner in which this case is handled or administered in this court. It will follow the same process as any other case. The make-up of the association's board does not alter this. It may be that the

debtor would like to have a board more favorably disposed to it than the current board, but the fiduciary duties of the board members, whoever they may be, remain the same. They are to collect all lawfully due condominium fees including, if any, those from the debtor. The question with respect to the condominium fees is whether they are properly due from the debtor and if so, the amount. The membership of the board of directors will not alter the fundamental issue of what condominium fees were due pre-petition or may become due in the future. It will not affect how the common expenses are allocated among all of the unit owners.

## **Count I**

Count I is on an entirely different basis. It alleges that the association violated the automatic stay by postponing the 2010 annual meeting. The condominium association asks that the count be dismissed. It argues that

> Count I should be dismissed because there was no violation of the automatic stay, since the Association did not take any action to target Gordon Properties or deny it any particular right, separate and apart from the actions taken with regard to all owners; postponement of the 2010 Annual Meeting was appropriate and based on the facts known to the Board; and the Court lacks subject matter jurisdiction over the matter because it is not an effort to collect a pre-petition debt.

Motion to Dismiss, ¶1.

Bankruptcy courts plainly have jurisdiction over allegations of violations of the automatic stay. The automatic stay is one of the central tenets of the Bankruptcy Code. Bankruptcy courts have the jurisdiction to modify or terminate the automatic stay, to determine its extent and applicability, and to enforce it.

The association's motion to dismiss actually is a short statement of the defenses and legal conclusions that the association is making in defense of the complaint. They do not go to the

jurisdiction of this court to determine whether those facts exist or whether those conclusions of law are justified. It is clearly within the jurisdiction of this court to determine whether the automatic stay has been violated and to fashion an appropriate remedy if there has been a violation. Count I is an action that arises under Title 11 of the United States Code, 28 U.S.C. §1334(b). Such matters have been referred by the District Court to this court by its Order of Reference.

## Supplemental Jurisdiction

The debtor asserts that the bankruptcy court could exercise supplemental jurisdiction under 28 U.S.C. §1367 as to Counts II, III and IV. The courts are divided as to whether §1367 supplemental jurisdiction may be exercised by bankruptcy courts. Both lines of cases start with the recognition that district courts have supplemental jurisdiction. One line finds no authority for the district courts to refer claims, not within §1334, but within §1367, to the bankruptcy courts. These courts read §1367 as expressly conferring power only to the district courts to exercise supplemental jurisdiction because of its terms, the legislative history, and because §1367 makes no reference to the bankruptcy courts. These cases do not interpret §1367 as supplementing the bankruptcy courts' §1334 jurisdiction, but rather, the argue that § 1334(b) itself provides bankruptcy courts with supplemental jurisdiction through the "related to" and "arising in" analysis. Section 1367 provides supplemental jurisdiction over all other claims that are "so related to claims in the action within such original jurisdiction that they form part of the same or controversy under Article III of the United States Constitution." Section 1334 also contains language that includes jurisdiction of cases that are "related to cases under title 11." Both §1334 and §1367 address claims that are related to the main proceeding. Both sections establish what claims, other than those arising in a case under Chapter

11 or in the case pending before the district court, may be brought in that proceeding. That does not necessarily mean that they are co-extensive, although they may well overlap. It may well be that many of the actions that are "so related" to a case before a district court so as to come within the ambit of §1367 also come within the ambit of "related to" jurisdiction under §1334. The difference may well have been a deliberate choice by Congress to restrict jurisdiction of the bankruptcy courts only to matters closely related to the bankruptcy proceeding itself. *Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 570 (5th Cir. 1995); *see generally Boyajian v. DeLuca (In re Remington Development Group),* 180 B.R. 365, 372-73 (Bankr.D.R.I. (1995); *Halvajian v. Bank of New York, N.A.*, 191 B.R. 56, 58 (D.N.J. 1995); and *Found. for New Era Philanthropy v. Prudential Sec., Inc. (In re Found. for New Era Philanthropy),* 201 B.R. 382, 397-98 (Bankr.E.D.Pa. 1996).

The second line of cases permits the reference. These courts read §1367(a) as allowing bankruptcy courts to exercise supplemental jurisdiction over claims within the same case or controversy with "any civil action over which the district courts have original jurisdiction." *TXNB Internal Case v. Edge Petroleum Operating Co., Inc. (In re TXNB Internal),* 483 F.3d 292, 300 (5th Cir. 2007). If it is clear that the district court has supplemental jurisdiction, this line of cases will determine if the matter is appropriate to refer to the bankruptcy courts pursuant to § 157. *Hospitality Ventures/LaVista v. Heartwood 11, LLC, et al. (In re Hospitality Ventures/LaVista),* 358 B.R. 462, 465-67 (Bankr. N. D. Ga. 2007) (determining that §1334(a) and (b) when compared to §157 are coextensive sections that operate to permit the referral of all matters over which a district court has bankruptcy jurisdiction under § 1334 to the bankruptcy judges); *In re Transcolor Corp.,* 2007 WL 2916408 (Bankr. D. Md. October 5, 2007); *Sasson v. Sokoloff (In re Sasson),* 424 F.3d 864, 868-69

(9th Cir. 2005), cert. denied, __U.S. __, 126 S. Ct. 2890 (2006); and *Eads v. Don Bricker Constr., Inc. (In re Eads),* 135 B.R. 387, 393-95 (Bankr.E.D.Cal. 1991).

It is not necessary to determine this issue in this instance because if bankruptcy courts have supplemental jurisdiction, it may be declined under §1367(c)(2). Here, it would be declined. The claims raised in Counts II, III, and IV are state cause of actions and are unrelated to whether the automatic stay has been violated. The factual predicates of the actions in the claims in Counts II, III, and IV differ from the factual predicate necessary to establish the claim in Count I. In Count I, the debtor need only show that there was a violation of the automatic stay. In Counts II, III, and IV, the debtor must establish facts that have no relationship to the bankruptcy case, do not necessarily assist the court in determining whether there was a violation of the automatic stay and would independently provide relief under state law.

**Remedy**

The condominium association raises one last argument and that is that the court has no jurisdiction to order an annual meeting of the association under Count I. This court has the power to remedy a violation of the automatic stay. If the remedy is to ensure that an action that the association has refused to take in violation of §362, is taken, it may order that action be taken, including holding an annual meeting. It is the causes of action in Counts II and III over which this court has no jurisdiction, not the remedy requested for a violation of the automatic stay in Count I. If ordering an annual meeting is the appropriate remedy for a violation of the automatic stay, this court has the jurisdiction to order the annual meeting be held. It is simply a remedy that flows from the wrong.

## **Conclusion**

For the foregoing reasons, Counts II, III, and IV will be dismissed.

Alexandria, Virginia
May 23, 2011

/s/ Robert G. Mayer
Robert G. Mayer
United States Bankruptcy Judge

Copy electronically to:

Donald F. King
Jennifer L. Sarvadi

16837