# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| In re:<br><br>GORDON PROPERTIES, LLC,<br><br>    Debtor. | Case No.  09-18086-RGM<br>(Chapter 11) |
| GORDON PROPERTIES, LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>FIRST OWNERS' ASSOCIATION OF<br>FORTY SIX HUNDRED CONDOMINIUM,<br>INC.,<br><br>    Defendant. | Adv. Proc. No. 11-1020 |

## MEMORANDUM OPINION

THIS CASE was before the court on September 28, 2011, on the motion of First Owners' Association of Forty Six Hundred Condominium, Inc., for a stay pending appeal of an order entered on August 24, 2011 (Docket Entry 73).

The standard for granting a stay pending appeal in the Fourth Circuit has been the same as that for granting a preliminary injunction. Those standards are set out in *Blackwelder Furniture Co. v. Seilig Manufacturing Company*, 550 F.2d, 189 (4th Cir. 1977). The decision of the Supreme Court in *Winter v. Natural Resources Defense Counsel, Inc.*, 555 U.S. 7, 129 S.Ct. 365 (2008) re-articulated the standards applicable to granting a preliminary injunction. The Fourth Circuit in *Real Truth about Obama, Inc. v. Federal Election Commission*, 475 F.3d, 342 (4th Cir., 2009), stated that those standards differ from those previously enunciated in *Blackwelder*. There is no indication after

1

*Winter* that the standards applicable to a motion for stay pending appeal and a preliminary hearing should differ. The *Blackwelder* factors and the *Winter* factors are similar, but not identical, and appear to be equally applicable to a stay pending appeal. The court will utilize the standards set out in *Winter*.

>In *Winter*, the Supreme Court stated:
>
>A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.

*Id.* at 55 U.S. at 555, 129 S.Ct. at 20 and 129 S.Ct. at 374. These same standards were repeated in *Real Truth*, 575 F.3d at 346.

### 1. Likelihood of Success on the Merits

The association essentially raises two areas in which it asserts that it is likely to succeed on the merits. The first is the underlying issue of the interpretation of the bylaws and the conclusion that the enforcement of the bylaws voting provisions violates §362 of the Bankruptcy Code. The court recognizes that there may be differences of opinion on these issues, but the question is the likelihood of success of the association on appeal. Reduced to its simplest, the bylaws voting provision deprives a debtor of a valuable right, that is, his right to vote at annual and special meetings of the association solely because he is delinquent in the payment of his condominium assessments. Section 362 prohibits a creditor from taking any action to collect a pre-petition debt. This was discussed in the memorandum opinion accompanying the order from which the association appeals. An action, even though lawful and proper prior to the filing of the petition in bankruptcy, may become improper after the filing of a petition in bankruptcy if its effect is to assist in the collection of a pre-petition debt. For example, a garnishment of a bank account is a proper action

prior to the filing of a petition in bankruptcy. However, after the filing of a petition in bankruptcy, a garnishment can no longer be maintained. Similarly, cases have held that a condominium withholding services because of a pre-petition delinquency is improper. Essentially, that is what the bylaw voting provision is all about. It is possible that the court's analysis is incorrect. However, the test is one of likelihood of success and the court is of the view that it is more likely than not that an appeal based on these issues will not be successful.

The association raises a second issue which is the effect on the election of directors if delinquent owners who are otherwise ineligible to vote are counted present for purposes of quorum.[1] This court is of the view that this assignment of error is not likely to succeed. First, and most notably, this issue was not raised in the litigation. The order is now on appeal and not subject to this court modifying it. The election is scheduled for Wednesday, October 5, 2011. Even if this court could modify the order to address these issues not raised before, it is simply too late to do so before the scheduled election.

On the merits, the court disagrees with the association's analysis. In brief, the association endeavors to read "total votes" as "total eligible votes". The court can find no reason to accept that interpretation. The bylaw's quorum requirement speaks of the "total votes of the Condominium Project". Bylaw Article IV, Section 5. The total number of votes in the condominium is 1,000 as established in the declaration.[2] The language is unambiguous. It appears to this court that the association is not likely to prevail on this assignment of error.

---

[1]The court notes that there was testimony that members of the board of directors, although present at the meeting, did not register and were not counted as a part of the quorum at the 2009 meeting because they did not feel that a quorum was "in the best interests" of the association. That, of course, was their judgment, not the association's judgment.

[2]The declaration actually establishes about 996 votes rather than 1,000. This appears to have been a typographical error.

### 2.  Irreparable Harm

The association asserts that it will suffer irreparable harm if this court's order is reversed. If reversed, then the debtor's votes should not be counted as required by this court's order. It argues that a board seated in that case could be fatally flawed and its future actions could be subject to challenge. There could be a period of time during which the association would not be able to operate. There are two problems with this issue. First, it is not clear that a board elected in accordance with a court order would be improperly seated even if the order were later reversed. There was insufficient time for counsel to fully brief this issue and there is some question as to whether the legal proposition is correct. However, it is not the deciding factor.

What is determinative is that no matter who is seated, there is a possibility that it will be the wrong board. If this court's decision is correct and it is sustained on appeal, a stay pending appeal would seat the wrong board, a board elected without counting the debtor's votes. It would be subject to the same asserted infirmities of which the association complains. On the other hand, if this court's order is reversed and the matter is not stayed, the debtor would vote, its votes would be counted and the board seated could suffer from the asserted infirmities. Either way, the irreparable harm of an improperly seated board depends ultimately on the outcome of the appeal. Granting a stay pending appeal only alters which board would be initially seated.

In this instance where the court has heard all of the evidence and where there would be harm to some party if the wrong board is seated, it is best to proceed with seating the board that the court has determined should be properly seated, that is, the board elected with the debtor voting and its votes being counted. It is more likely than not that that board is the proper board

Another injury the association suggests could be the lapse of the time within which an appeal

could be taken or prosecuted. In particular, the association points to the mischief that would follow if Mr. Sells were elected to the board of directors. It suggests that he would prevent an appeal from any decision favorable to the debtor. Everyone seated as a director has a fiduciary obligation to the association which includes prosecuting appeals, as may be appropriate. There are restrictions on interested directors participating in such decisions. Mr. Sells is but one of seven directors. Moreover, while acknowledging the association's fear, the court heard Mr. Sell's testimony differently. It heard that the next board, including Mr. Sells if elected, would have to carefully consider the situation. That is, in fact, the right answer. Nonetheless, as discussed below, it may be appropriate after the election to seek further guidance from this court and to impose restrictions on the elected board so as to preserve rights or prevent specific harms.

Granting a stay pending appeal would likely do more harm to the association than it would prevent.

### 3.  **Balance of Equities**

The balance of equities favors the debtor. The association, through its incumbent board of directors, has engaged in abusive conduct that has substantially contributed to the failure to hold annual meetings and elections for the past five years. It was solely responsible for the cancellation of the 2010 annual meeting. The last election of the board of directors was in 2006. All directors now serving were elected either in 2005 or 2006, each for two year terms or until their successor are elected. As a consequence of not holding an annual meeting since 2006, all directors are either holdover directors or were elected by holdover directors. The members of the association have not had the opportunity to vote in five years due, in large part, to this conduct. To grant the requested stay pending appeal only rewards and furthers the current board's previous conduct. In this instance,

5

the equities do not favor the association.

### 4. Public Interest

In many cases, the public interest is not directly involved. This case is different. The membership of the association is the specific public that is affected by this particular election. There are more than 400 units and somewhere in the neighborhood of 600 to 800 individuals who are affected by the election of the board of directors and the directors' action until the next annual meeting. There has not been an annual meeting for five years. They have not had an opportunity to elect a board that will take the direction they would like the board to take or to adopt policies that they believe are beneficial to the association. To stay the order in this case would alter the election results until an appeal is finally heard. It is detrimental to the members of the association. They ought to have a proper vote. It is not important to the court who is elected, only that a proper election be held and that the members have the opportunity to elect the board of their choice.

All four factors weigh against the association and based on them, the stay pending appeal will be denied.

The court notes that the real issue raised by the association is the legitimacy of the future actions of the board of directors that will be elected next Wednesday. At the oral argument on the motion, counsel for the association set out various scenarios that could occur. There may be a sufficient quorum without considering the delinquent owners who do not have the right to vote. In that case, there is a proper quorum, the meeting is properly called to order, and the vote can be taken. Alternatively, there may be a quorum only with the presence of those members who may not vote because of the bylaws voting provision. This is what the association now raises as an issue. The court is of the view that the bylaw voting provision and the quorum provision are unambiguous

and that while delinquent unit owners not in bankruptcy do not have the right to vote, they do have the right to attend the meeting, participate in the meeting and be counted as part of the quorum. The quorum provision, which is distinct from the bylaws voting rights provision, contains no restriction to the contrary.

If there is an election, the results of the election may or may not be affected by the vote of the debtor. There are two alternatives. One is counting the votes of the debtor and the other is not counting the votes of the debtor. It may be that the results of both would be the same. It may be that they would be substantially different. It may be that some directors would be elected in either event. The issue of the validity of the actions of the board of directors should be considered but has not been sufficiently briefed by counsel and in any event depends on the election results.

There are many scenarios that may occur. Some would render the present concerns moot. In the end, only one of the many possibilities will occur. The court can entertain, as may be appropriate, a motion after the election to preserve the integrity of the future acts of the board of directors that is elected on October 5, 2011. After the election, the possibilities will have been reduced to one. The particular risks and threats can be evaluated and the court can mold a more nuanced order that will protect the rights of all parties involved.

The four factors in *Winter* have not been satisfied and the stay pending appeal will be denied without prejudice to seeking an appropriate order after the election results are known.

DONE at Alexandria, Virginia, this 29th day of September, 2011.

/s/ Robert G. Mayer
Robert G. Mayer
United States Bankruptcy Judge

Copy electronically to:

Jennifer L. Sarvadi

Donald F. King

17229